Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone:   (415) 788-4220
Facsimile:    (415) 788-0161

*Counsel for Plaintiff Zachary Nichols*
*and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY NICHOLS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>LOAN DEPOT, INC.,<br><br>        Defendant. | Case No. 8:24-cv-00342<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Upon personal knowledge as to his own acts, and based upon his investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Zachary Nichols, on behalf of himself and all others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action against loanDepot, Inc. ("loanDepot" or "Defendant") for its failure to adequately secure and safeguard his and at least 16.6 million other individuals' personally identifying information ("PII"), including their names and addresses, driver's licenses or other government identification documents, social security numbers, demographic information, employment information, and financial information, among other potentially sensitive, private, and confidential data.

2. LoanDepot is an Irvine, California-based nonbank holding company which sells mortgage and non-mortgage lending products. It is the nation's fifth largest retail mortgage lender and funds more than 27,000 customers per month.[1] LoanDepot assures customers that it has "adopted policies and procedures designed to protect your personally identifiable information" and that "all data that is considered highly confidential data can only be read or written through defined service access points, the use of which is password-protected. The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility."[2]

3. LoanDepot also claims on its "About Us" webpage that its "mello" software platform "seamlessly and securely collect[s] your income, employment, and asset information – [so] we can ensure that your transactions with us are fast, straightforward, and hassle-free."[3]

---

[1] https://www.loandepot.com/about (Last accessed February 14, 2024)
[2] https://www.loandepot.com/privacypolicy (Last accessed February 14, 2024)
[3] https://www.loandepot.com/about (Last accessed February 14, 2024)

4.      In the course of providing financial services to its customers, individuals provided loanDepot (or loanDepot otherwise received) PII from millions of persons. In turn, loanDepot came into the possession of, and maintains extensive files containing, the PII of its customers, employees, and other persons, and owes these individuals an affirmative duty to adequately protect and safeguard this private information against theft and misuse. Despite such duties created by statute, regulation, and common law, at all relevant times, loanDepot utilized deficient data security practices, thereby allowing millions of persons' sensitive and private data to fall into the hands of strangers.

5.      On January 8, 2024, loanDepot announced that hackers had breached its systems. It is unclear how long the breach went undetected prior to January 8, 2024, nor which systems were breached. However, in a report to the SEC, loanDepot indicated that "the unauthorized third party activity included access to company systems and the encryption of data."[4] access included the company's systems and the encryption of data. Several of loanDepot's key systems were down for an extended period of time – for example, it did not bring its servicing customer portal and mobile app fully back online until January 19, 2024.[5] LoanDepot claims that upon detecting the breach "the Company promptly took steps to contain and respond to the incident, including launching an investigation with assistance from leading cybersecurity experts, and began the process of notifying applicable regulators and law enforcement."

6.      February 16, 2024, loanDepot has not disclosed the scope of the PII which was breached, how long the information was breached, the number of customers impacted, the specific systems compromised, or agencies notified (besides the SEC filing) or services retained. Plaintiff is unaware of any Data Breach letter

---

[4] https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/0001831631/000183163124000004/ldi-20240104.htm (Last Accessed February 16, 2024)
[5] https://loandepot.cyberincidentupdate.com

notification sent by loanDepot nor has Defendant notified Plaintiff or any other party of how they should respond to the breach or if they will be providing any identity protection services.[6] The Data Breach was directly and proximately caused by loanDepot's failure to implement reasonable and industry-standard data security practices necessary to protect its systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of millions of individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiff and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiff and Class Members have lost the inherent value of their private data.

7. By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

8. Despite the Data Breach being first purportedly detected on January 8, 2024, loanDepot has failed to notify impacted persons as of the date of this complaint, ***more than a month later.*** This exacerbates the damages and risks to Class Members.

---

[6] Defendant issued a media statement nearly a month ago stating it would provide identity protection services and credit monitoring. However, on information and belief, Defendant has not actually offered this service to any customers or victims of the data breach, nor have they indicated what company and services will be utilized nor how long the protection will be provided.

To the limited extent loanDepot has provided information about the breach, it has obscured the true nature of the cyberattack and threat it posed and failed to adequately inform Plaintiff and Class Members of how many people were impacted, how the "bad actor" accessed loanDepot's systems and the root cause of the Data Breach, what "personal information" was stolen, whether the exfiltrated information was encrypted or anonymized, why it took so long to notify victims, whether loanDepot notified law enforcement of the Data Breach, or what specific remedial steps loanDepot has taken to safeguard PII within its systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward. Without these critical details, Plaintiff and Class Members cannot meaningfully mitigate the resulting effects of the loanDepot Data Breach.

9.  Plaintiff Zachary Nichols is customer of loanDepot and on information and belief is a victim of the data breach.

10. Plaintiff, on behalf of himself and all others similarly situated, herein allege claims for negligence, breach of contract, invasion of privacy, and violation of California's Unfair Competition Law Cal. Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"). Plaintiff, on behalf of himself and the Class, seeks: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendant's custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and for loanDepot to provide long-term identity theft protective services to Plaintiff and Class Members; and (v) such other relief as the Court deems just and proper.

## PARTIES

### A.  Plaintiff

11. Plaintiff Zachary Nichols is a citizen and resident of Phoenix, Arizona. He is a customer of loanDepot and on information and belief is a victim of this data breach.

**B.**     **Defendant**

12.     Defendant loanDepot, Inc. is a Delaware corporation with its principal place of business at 6561 Irvine Center Drive, Irvine, California, 92618. It is one of the largest private independent retail mortgage and residential lenders in the United States and employs more than 6,000 people nationwide.[7]

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendant, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.     This Court has general personal jurisdiction over loanDepot because it maintains its principal place of business in Irvine, California and regularly conducts business in California, and has sufficient minimum contacts in California, such as to not offend traditional notions of fair play and substantial justice.

15.     Venue in this District is proper under 28 U.S.C. § 1391 because loanDepot resides in this District and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, including Defendant collecting or storing the PII of Plaintiff and the putative Class Members.

## FACTUAL BACKGROUND

**A.**     **loanDepot Collects, Stores, and Maintains Huge Amounts of Personally Identifiable Information.**

16.     loanDepot, was founded in 2010 and is a non-bank mortgage and loan company which claims to have funded more than $275 billion since its inception.  It

---

[7] https://www.loandepot.com/about (Last accessed February 14, 2024)

operates in all fifty states, and it purports to deliver a "digital mortgages experience that enables you to be served quickly and easily."[8]

17.     To utilize loanDepot's financial services, customers and consumers like Plaintiff Nichols are required to provide loanDepot with a large quantity of highly sensitive and private information. On its privacy policy webpage, loanDepot admits to collecting the following extremely personal information:

### Information We Collect

*Consumer and Customers*

We collect information about you to help us serve your financial, real estate, insurance, credit, and homeownership-related needs; to provide you with quality products and services; and to fulfill legal and regulatory requirements. We consider non-public information about you in our possession to be personally identifiable information, even if you cease to be a customer. The personally identifiable information we collect about you may include:

- Identifying information, such as your name, age, address, phone number and social security number
- Employment information
- Contact information (such as first and last name, mailing or property address, phone number, email address)
- Account access information, such as username and password
- Demographic information (such as date of birth, gender, marital status, ethnicity, race)
- Social security, driver's license, passport, and other government identification numbers
- Loan account information (such as loan number)
- Bank account and credit/debit card numbers
- Other personal information needed from you to provide real estate-related, loan-related, insurance-related, credit-related, and homeownership-related services to you
- Information for fraud detection and prevention
- Financial information such as your income, assets and liabilities, as well as information about your savings, investments, insurance and business.[9]

[8] *Id.*
[9] https://www.loandepot.com/privacypolicy (Last Accessed February 14, 2024)

18.    LoanDepot understands that data cybersecurity is critical and important for its customers. In addition to advertising the security of its "mello" digital loan transaction technology, loanDepot represents that:

> "We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as the use of passwords, firewalls, virus prevention and use detection software."

And that

> "All data that is considered highly confidential data can only be read or written through defined service access points, the use of which is password-protected. The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility. Access to the system, both physical and electronic, is controlled and sanctioned by a high-ranking manager."[10]

19.    Despite these strong proclaimed proactive policies and approaches to data security and privacy for its customers and healthcare partners, loanDepot failed to adequately secure and safeguard its systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiff and the Class.

**B.    The LoanDepot Data Breach Exposed Valuable PII**

20.    LoanDepot collected and maintained Plaintiff's and the Class's PII in its computer systems, servers, and networks. In accepting, collecting, and maintaining Plaintiff's and the Class's PII, loanDepot agreed that it would protect and safeguard that data by complying with state and federal laws and regulations and applicable industry standards. LoanDepot was in possession of Plaintiff's and the Class's PII before, during, and after the Data Breach.

---

[10] *Id.*

21.     Despite loanDepot's duties and commitments to safeguard sensitive and private information, loanDepot failed to follow industry-standard practices in securing Plaintiff's and the Class Members' PII, as evidenced by the Data Breach.

22.     On January 22, 2024, Loan Depot announced that an unauthorized third party has gained access to the sensitive information of at least 16.6 million individuals within loanDepot's systems.[11]

23.     In response to the Data Breach, loanDepot contends that it "has been working diligently with outside forensics and security experts to investigate the incident and restore operations as quickly as possible."[12] Although loanDepot claims to be working to restore "normal" operations, there is no acknowledgement that the insufficiency of "normal" operations led to the data breach in the first place. LoanDepot does not express any desire to change, update, and otherwise improve security and other protocols which clearly failed here, let alone provide any clear explanation of what new security protocols and safeguards will be put in place.

24.     LoanDepot has failed to provide required state and individual notifications to its customers of the scope or breadth of the data breach. As of time of filing, loanDepot has not offered any compensation or complimentary credit monitoring or identity theft protection services to affected persons. Although loanDepot claimed on its website on January 22 that it would notify afffected individuals and would offer credit monitoring and identity protection services, no such notification nor offer of credit monitoring or identity protection of has actually been provided.[13] The only "relief" offered to customers that Plaintiff is aware of, is loanDepot's statement on January 26th that late fees for January payments would not

---

[11] https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx (Last accessed February 14, 2024)
[12] *https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx* (last accessed February 14, 2024)
[13] https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx (Last accessed February 14, 2024)

be assessed until after January 31, 2024.[14] This is entirely insufficient. The risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII remains very high.

**C. The Financial Sector Is Increasingly Susceptible to Data Breaches, Giving loanDepot Ample Notice That It Was a Likely Cyberattack Target**

25.    At all relevant times, Defendant knew, or should have known, that the PII it was entrusted with was a target for malicious actors. Defendant knew this given the unique type and the significant volume of data on its networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the unencrypted data would harm.

26.    As custodian of Plaintiff's and Class Members' PII, loanDepot knew or should have known the importance of protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

27.    LoanDepot was on notice that it was actively being targeted by hackers. In August of 2022, loanDepot was subject to a cyberattack that bypassed loanDepot's email security controls and leveraged a legacy authentication protocol to bypass multi-factor authentication. The attack exposed tens of thousands of documents and impacted well over a thousand individuals.[15] LoanDepot knew or should have known that the probability of additional sophisticated attacks was and is high, and that additional significant security measures were needed to prevent the risk of more breaches.

28.    Defendant's security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years, particularly

---

[14] https://loandepot.cyberincidentupdate.com (Last accessed February 14, 2024)
[15] https://www.doj.nh.gov/consumer/security-breaches/documents/loandepot-20230424.pdf (last accessed February 14, 2024)

those targeting financial businesses and other organizations like Defendant, which store and maintain large volumes of PII.

**D.** **loanDepot Breached Its Duties to Plaintiff and the Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.**

29. Because Defendant was entrusted with PII at all relevant times , loanDepot owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. Defendant also owed a duty to safeguard PII because it was on notice that it was handling highly valuable data and knew there was a significant risk it would be targeted by cybercriminals. Furthermore, loanDepot knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

30. Security standards commonly accepted among businesses like loanDepot that store PII include, without limitation:

      i.      Maintaining a secure firewall configuration;

      ii.     Monitoring for suspicious or irregular traffic to servers or networks;

      iii.    Monitoring for suspicious credentials used to access servers or networks;

      iv.    Monitoring for suspicious or irregular activity by known users;

      v.     Monitoring for suspicious or unknown users;

      vi.    Monitoring for suspicious or irregular server requests;

      vii.   Monitoring for server requests for PII;

viii.    Monitoring for server requests from VPNs; and

ix.    Monitoring for server requests for Tor exit nodes.

31.    The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[16] and protection of PII which includes basic security standards applicable to all types of businesses.[17]

32.    The FTC recommends that businesses:

i.    Identify all connections to the computers where sensitive information is stored.

ii.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.    Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v.    Pay particular attention to the security of their web applications— the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.    Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

---

[16] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf. (Last Accessed February 14, 2024)

[17] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf. (Last Accessed February 14, 2024)

vii.     Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.     Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.     Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

33.     As described further below, Defendant owed a duty to safeguard PII under several statutes, including the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to ensure that all information it received, maintained, and stored was secure. These statutes were enacted to protect Plaintiff and the Class Members from the type of conduct in which Defendant engaged, and the resulting harms Defendant proximately caused Plaintiff and the Class Members.

34.     Under the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

35.     Defendant breached its duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal

information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of healthcare services to its clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, loanDepot also violated its duties under the FTC Act.

36. Defendant failed to prevent the Data Breach. Had loanDepot properly maintained and adequately protected its systems, servers, and networks, the Data Breach would not have occurred.

37. Additionally, the law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. LoanDepot further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members.

**E.** **The Experience of Plaintiff Nichols**

38. Plaintiff Nichols has been a customer of Defendant loanDepot since at least December of 2021 when Plaintiff used them to obtain a mortgage loan.

39. As a prerequisite for obtaining the mortgage, Plaintiff Nichols provided extensive PII and other private sensitive and financial information to defendants. This information included:

- Full Name

- Residential/Mailing Address
- Email Address
- Date of Birth
- Social Security Number
- Phone number
- Credit Score
- Tax returns, pay stubs, and bank statements
- Employment related information
- Marital information (Plaintiff Nichols is married, and loanDepot also acquired all listed information about his spouse, as well as limited information concerning Plaintiff's children)
- Drivers' license information.
- Account creation information such as username and password.
- Homeowner's insurance policy as well as tax information related to the purchase of the property.

40. As a proximate result of the Data Breach, Plaintiff Nichols will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring his accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured.

41. In the time following the Data Breach, Nichols has experienced a significant uptick in phishing emails which he believes may have resulted from the Data Breach.

42. Plaintiff Nichols has and is experiencing fear, stress, and frustration because his sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

43.     Nichols suffered actual injuries in the form of damages to and diminution in the value of their PII —a form of intangible property was entrusted to loanDepot, which was compromised in and as a proximate result of the Data Breach.

44.     Nichols has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and cybercriminals.

45.     Nichols has a continuing interest in ensuring that his PII, which remains within loanDepot's possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

46.     Defendant deprived and is continuing to deprive Nichols of the earliest opportunity to guard himself against the Data Breach's harmful effects by failing to promptly notify him about it. As of February 16, 2024 Defendant still has not provided a data breach notification letter to Plaintiff.

### F.     <u>Plaintiff Nichols and the Class Suffered Actual and Impending Injuries Resulting from the Data Breach</u>

47.     As a proximate result of Defendant's completely unreasonable security practices, identity thieves now possess the sensitive PII of Nichols and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Nichols and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[18] And, "[t]he damage to affected [persons] may never be undone."[19]

---

[18] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.
[19] *Id.*

48.     Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming from the theft and that the average financial loss experienced by an identity theft victim was $1,160 per person.[20] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[21]

49.     As a consequence of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

50.     LoanDepot has provided no compensation or relief whatsoever to affected persons for its wrongful conduct and actions described herein. loanDepot

---

[20] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.
[21] *Id.*

merely expresses that "Unfortunately, we live in a world where these types of attacks are increasingly frequent and sophisticated, and our industry has not been spared. We sincerely regret any impact to our customers."[22] The increasing frequency of these types of attacks is *exactly* why loanDepot should have taken greater steps to protect private data. It is entirely insufficient for Defendant to attempt to wash its hands of any duty to protect the valuable personal information entrusted to it, and its expression of mere "regret" is completely inadequate under the circumstances. After a cybersecurity incident such as the one perpetrated here, the breached company typically offers years-long free identity protection services to affected individuals.

## CLASS ACTION ALLEGATIONS

51.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seek certification of the following nationwide class (the "Nationwide Class" or the "Class"):

> All persons whose PII was compromised in the Data Breach discovered by loanDepot on or about January 8, 2024.

52.     Excluded from the Nationwide Class are governmental entities, loanDepot, any entity in which loanDepot has a controlling interest, and loanDepot's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

53.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

---

[22] https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx (Last accessed February 14, 2024)

54. _Numerosity Under Rule 23(a)(1)_. The Nationwide Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Nationwide Class in a single action will provide substantial benefits to the parties and the Court. Although the precise number of members of the Nationwide Class are unknown to Plaintiff at this time, on information and belief, the proposed Nationwide Class contains at least 16.6 million individuals, as reported by Defendant itself. Discovery will reveal, through loanDepot's records, the exact number of members of the Nationwide Class.

55. _Commonality Under Rule 23(a)(2)_. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Nationwide Class. These common questions, which do not vary among members of the Nationwide Class and which may be determined without reference to any Nationwide Class Member's individual circumstances, include, but are not limited to:

a. Whether Defendant knew or should have known that its computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b. Whether Defendant failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that its computer systems and networks were protected;

c. Whether Defendant failed to take available steps to prevent and stop the Data Breach from occurring;

d. Whether Defendant owed a legal duty to Plaintiff and Class Members to protect their PII;

e. Whether Defendant breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

f. Whether Defendant provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

g.     Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

h.     Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

56.     *Typicality Under Rule 23(a)(3)*. Plaintiff's claims are typical of the claims of the Class. Nichols, like all proposed members of the Class, had their PII compromised in the Data Breach. LoanDepot's uniformly unlawful course of conduct injured Nichols and Class Members in the same wrongful acts and practices. Likewise, Nichols and other Class Members must prove the same facts in order to establish the same claims.

57.     *Adequacy of Representation Under Rule 23(a)(4)*. Nichols is an adequate representative of the Nationwide Class because he is a Nationwide Class Member and his interests do not conflict with the interests of the Class. He has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Nichols and his counsel intend to vigorously prosecute this action for the Nationwide Class's benefit and have the resources to do so. Nichols and his counsel have no interests adverse to those of the other members of the Nationwide Class.

58.     *Predominance and Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by loanDepot's wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the

prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

59. As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(b)(2) and (b)(3) is appropriate.

## FIRST CAUSE OF ACTION
### Negligence
### *(On Behalf of Plaintiff and the Class)*

60. Plaintiff incorporates by reference and realleges paragraphs 1-59 as if fully set forth herein.

61. In the course of providing financial services to its clients and customers, including loan and mortgage services, Defendant solicited, gathered, and stored the PII of Plaintiff and Class Members. Because Defendant was entrusted with such PII at all relevant times, loanDepot owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. This duty arose independently from any contract.

62. Defendant knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches both generally and the increasing rate of cybercriminals specifically targeting the finance industry, like Defendant. LoanDepot owed a duty of care to Plaintiff and

Class Members because it was foreseeable that loanDepot's failure to adequately safeguard their PII in accordance with industry standards concerning data security would result in the compromise of that sensitive information. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in its employ responsible for such tasks.

63. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. LoanDepot also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

64. Defendant also had a common law duty to prevent foreseeable harm to others. Defendant had full knowledge of the sensitivity and high value of the PII that it stored and the types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. LoanDepot's conduct created a foreseeable and unreasonable risk of harm to Plaintiff and Class Members, who were the foreseeable victims of loanDepot's inadequate data security practices.

65. Defendant violated its duty to implement and maintain reasonable security procedures and practices, including through its failure to adequately restrict access to its purportedly secure "mello" digital platform, or to encrypt or anonymize such data. LoanDepot's duty included, among other things, designing, maintaining, and testing loanDepot's information security controls to ensure that PII in its possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems

and monitoring mechanisms, and using access controls to limit access to sensitive data.

66.     LoanDepot's duty of care also arose by operation of statute, as follows:

        a.     Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

67.     The FTC Act was enacted to protect Plaintiff and the Class Members from the type of wrongful conduct in which Defendant engaged.

68.     Defendant breached its duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of financial services to its clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Member's confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, loanDepot also violated its duties under the FTC Act.

69.     The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. LoanDepot further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and

Class Members. Timely disclosure is necessary so that Plaintiff and Class Members can, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

70.     LoanDepot advertises it has funded more than $275 billion in loans since its inception only 14 years ago in 2010 and employs a "nationwide team" of more than 6,000.[23] Accordingly, loanDepot had the financial and personnel resources necessary to prevent the Data Breach. LoanDepot nevertheless failed to adopt reasonable data security measures, in breach of the duties it owed to Plaintiff and Class Members.

71.     Plaintiff and Class Members had no ability to protect their PII once it was in loanDepot's possession and control. loanDepot was in an exclusive position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

72.     But for Defendant's breach of its duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of loanDepot's negligence, Plaintiff and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between loanDepot's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff and Class Members.

73.     As a direct and traceable result of Defendant's negligence, Plaintiff and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff and the Class include, without limitation: (i) loss of the

---

[23] https://www.loandepot.com/about (Last accessed 2/13/2024)

opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendant; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in its possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

74.     Defendant's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendant's care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

75.     Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Contract
### *(On Behalf of Plaintiff and the Class)*

76.     Plaintiff incorporates by reference and realleges paragraphs 1-59 as if fully set forth herein.

77.     Plaintiff and Class Members entered into valid and enforceable contracts with loanDepot in exchange for services wherein loanDepot agreed to safeguard and protect their confidential and private PII and to timely and accurately notify Plaintiff and Class Members if their information had been breached and compromised.

78.     LoanDepot acquired, stored, and maintained the PII of Plaintiff and the Class that it received either directly from them or that loanDepot received from its financial clients.

79.     The contract included promises to protect, secure, and not disclose the extensive personal and financial information provided, including but not limited to as outlined in Defendants' privacy policy.[24]  Plaintiff and Class Members were required to provide, or authorize the transfer of, their private information and finance information in order for loanDepot to provide its loan and mortgage services. Plaintiff and Class Members paid money, or money was paid on their behalf, to loanDepot in exchange for such services.

80.     loanDepot solicited, offered, and invited Class Members to provide their private information and financial records as part of loanDepot's regular business practices. LoanDepot advertised the security of its digital services.[25]  Plaintiff and Class Members accepted loanDepot's offers and provided their private information and financial information to loanDepot.

81.     loanDepot accepted possession of Plaintiff's and Class Members' PII for the purpose of providing loan and mortgage services to Plaintiff and Class Members.

82.     loanDepot's implied promise of confidentiality to Plaintiff and Class Members includes consideration beyond those pre-existing general duties owed under the FTC Act, or other state or federal regulations. The additional consideration

---

[24] https://www.loandepot.com/privacypolicy (Last Accessed February 14, 2024)
[25] https://www.loandepot.com/about (Last Accessed February 14, 2024)

included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

83. loanDepot's implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized purpose; (c) restricting access to qualified and trained agents; (d) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (e) applying or requiring proper encryption; (f) multifactor authentication for access; and (g) other steps to protect against foreseeable data breaches.

84. loanDepot's implied promises to safeguard Plaintiff's and Class Members' PII are evidenced by, *e.g.*, representations in Defendant's Privacy Policy described above. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and loanDepot on the other, is further demonstrated by their conduct and course of dealing.

85. Plaintiff and the Class Members would not have entrusted their PII to loanDepot in the absence of such a contract. Had loanDepot disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their PII to loanDepot.

86. LoanDepot recognized that Plaintiff's and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

87. Plaintiff and the Class Members fully and adequately performed their obligations under the implied contracts with loanDepot.

88. LoanDepot breached the contracts it made with Plaintiff and the Class Members by failing to take reasonable measures to safeguard their PII as described

herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

89. As a direct and proximate result of loanDepot's wrongful conduct, Plaintiff and the other Class Members did not receive the full benefit of the bargain, and received financial services that were less valuable than described in the contract. Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or alternatively, nominal damages. Plaintiff and Class Members are also entitled to injunctive relief requiring loanDepot to strengthen its data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

## THIRD CAUSE OF ACTION
### Invasion of Privacy
#### (On Behalf of Plaintiff and the Class)

90. Plaintiff incorporates by reference and realleges paragraphs 1-59 as if fully set forth herein.

91. Plaintiff and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored, and maintained by loanDepot, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

92. Plaintiff and Class Members reasonably expected that Defendant would protect and secure their PII from unauthorized parties and that their private information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

93. LoanDepot unlawfully invaded the privacy rights of Plaintiff and Class Members by engaging in the wrongful conduct described above, including by failing to protect their PII by permitting unauthorized third parties to access, exfiltrate, and

view this private information. Likewise, loanDepot further invaded the privacy rights of Plaintiff and Class Members and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what PII had been accessed, exfiltrated, and viewed by unauthorized third parties.

94.     This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiff's and the Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

95.     Plaintiff's and the Class Members' PII is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and the Class Members' PII and financial records, and such private information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

96.     The disclosure of Plaintiff's and the Class Members' PII, including extensive private financial records and related information as outlined previously, to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

97.     loanDepot's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff's and the Class Members' sensitive PII is such that it would cause serious mental injury, shame, embarrassment, or humiliation to people of ordinary sensibilities.

98.     The unauthorized access, exfiltration, and disclosure of Plaintiff's and the Class Members' PII was without their consent, and in violation of various statutes, regulations, and other laws.

99.     As a result of the invasion of privacy caused by Defendant, Plaintiff and the Class Members suffered and will continue to suffer damages and injuries as set forth herein.

100. Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").
### *(On Behalf of Plaintiff and the Class)*

101. Plaintiff incorporates by reference and realleges paragraphs 1-59 as if fully set forth herein.

102. loanDepot and Plaintiff are "persons" as defined by the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17201.

103. The UCL states that "unfair competition shall mean and include any [1] unlawful, unfair or fraudulent business act or practice and [2] unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

104. Additionally, Defendant states in its terms of use on its website that disputes "shall be governed by and construed in accordance with the laws of California"[26] and has its primary place of business in California.

105. By failing to take reasonable precautions to protect the PII of Plaintiff and Class Members, loanDepot has engaged in "unlawful," "unfair," and "fraudulent" business practices in violation of the UCL.

106. First, loanDepot engaged in "unlawful" acts or practices because it violated multiple laws, including but not limited to the California Consumer Records Act, Cal. Civ. Code § 1798.81.5 (requiring reasonable data security measures); the FTC Act, 15 U.S.C. § 45; and the common law, all as alleged herein.

107. Defendant's unfair acts and practices include but are not limited to:

---

[26] https://www.loandepot.com/termsofuse (Last Accessed February 16, 2024)

a.     Failing to adequately implement and maintain reasonable data security measures to protect Plaintiff and the Class Members PII including sensitive financial information. Defendant failed to identify foreseeable security risks, remediate identified risks, and adequately improve its data security in light of the highly sensitive nature of the data which it maintained and the known risk of cyber intrusions in the financial services industry. Defendant's conduct, including their extensive representations about the security of their systems, is unfair when weighed against the harm to Class Members whose PII has been compromised.

b.     Defendant's failure to implement and maintain reasonable data security measures was also contrary to the legislatively declared public policy that seeks to protect consumers' personal information and ensure that entities entrusted with PII adopt appropriate security measures. These policies are reflected in various laws including, but not limited to, FTC Act, 15 U.S.C. § 45; and the California Consumer Records Act, Cal. Civ. Code § 1798.81.5 (requiring reasonable data security measures) and the California Financial Information Privacy Act, Cal. Fin. Code § 4050-4060 (requiring financial institutions to protect the privacy of personally identifiable financial information).

108.   Plaintiff and Class members transacted with loanDepot in California. LoanDepot is headquartered and has its principal place of business in California, on information and belief the breached data in question was stored in California, and its terms of service include a California choice of law provision.[27]

109.   As a direct and proximate result of Defendant's wrongful conduct, including its unfair and unlawful practices, Plaintiff and the Class Members have suffered various types of damages alleged herein.

110.   The UCL states an action may be brought by any person who has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Civ. Code § 17204. Plaintiff and class members suffered injury in

---

[27] https://www.loandepot.com/termsofuse (Last Accessed February 14, 2024)

fact and lost money and property as a result of the unfair competition including the loss of value of their breached PII. This PII is valuable, as demonstrated not only by the fact that Defendant requires it as a precondition for their service, but also by the extensive uses for the data including the many uses Defendant identifies in their privacy policy.

111. Cal. Bus. & Prof. Code § 17203 states:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments [...] as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

112. Plaintiff and Class Members are entitled to the injunctive relief requested herein to address defendants past and future acts of unfair competition.

113. Plaintiff and Class members are entitled to restitution of money and property that was acquired by means of Defendant's unfair competition and restitutionary disgorgement of all profits defendants accrued as a result of its unfair business practices.

114. Plaintiff and Class members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud and can never be fully remedied through damages.

115. Further, if an injunction is not issued, Plaintiff and Class members will suffer irreparable injury. The risk of another breach is real, immediate, and substantial. Plaintiff lacks an adequate remedy at law that will reasonably protect against the risk of such a further breach.

116. Plaintiff and the Class seek all monetary and non-monetary relief allowed by the UCL, including reasonable attorneys' fees under Cal. Code of Civ. Procedure § 1021.5

## FIFTH CAUSE OF ACTION
### Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*
### *(On Behalf of Plaintiff and the Class)*

117.   Plaintiff incorporates by reference and realleges paragraphs 1-59 as if fully set forth herein.

118.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

119.   Defendant owes a duty of care to Plaintiff and Class Members, which required loanDepot to adequately monitor and safeguard Plaintiff's and Class Members' PII.

120.   Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff and Class Members.

121.   An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII, and the risk remains that further compromises of their private information will occur in the future.

122.   Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.       Defendant owes a legal duty to adequately secure the PII of Plaintiff and the Class within its care, custody, and control under the common law, and Section 5 of FTC Act;

b.	Defendant breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c.	Defendant's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiff and the Class within loanDepot's custody, care, and control; and

d.	Defendant's ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

123.	This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect the PII of Plaintiff and the Class within its custody, care, and control, including the following:

a.	Order Defendant to provide lifetime credit monitoring and identity theft insurance and protection services to Plaintiff and Class Members; and

b.	Order that, to comply with Defendant's obligations and duties of care, loanDepot must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i.	Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems, networks, and servers on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.	Encrypting and anonymizing the existing PII within its servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendant to provide adequate financial services to its clients and customers;

iii.	Engaging third-party security auditors and internal personnel to run automated security monitoring;

iv.     Auditing, testing, and training its security personnel regarding any new or modified procedures;

v.     Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems, networks, and servers;

vi.     Conducting regular database scanning and security checks; and

vii.     Routinely and continually conducting internal training and education to inform Defendant's internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

124.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another loanDepot data breach or cybersecurity incident occurs, Plaintiff and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiff and the Class for the serious risks of future harm.

125.   The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

126.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent loanDepot data breach or cybersecurity incident, thus preventing future injury to Plaintiff and the Class and other persons whose PII would be further compromised.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class set forth herein, respectfully requests the following relief:

A.  Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiff and their counsel to represent the Class and Subclasses;

B.  Entering judgment for Plaintiff and the Class;

C.  Granting permanent and appropriate injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

D.  Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.  Award statutory or punitive damages and penalties as allowed by law in an amount to be determined at trial;

F.  Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

G.  Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.  Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.  Granting such further and other relief as may be just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

Dated:       February 16, 2024          **SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Amber L. Schubert*

Robert C. Schubert (S.B.N. 62684)
Amber L. Schubert (S.B.N. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:   (415) 788-4220
Facsimile:   (415) 788-0161
E-mail:       rschubert@sjk.law
             aschubert@sjk.law

*Counsel for Plaintiff Zachary Nichols and the Putative Class*